**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICKY R. FRANKLIN | ) | |
| | ) | Case No. 1:16-cv-09660 |
| Plaintiff | ) | |
| | ) | Judge: Robert W. Gettleman |
| vs. | ) | |
| | ) | Magistrate: Maria Valdez |
| EXPRESS TEXT LLC | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.       INTRODUCTION

This is an opportunistic Telephone Consumer Protection Act ("TCPA") lawsuit by a serial plaintiff for Express Text's alleged failure to comply with TCPA's prohibition against sending text-messages using an Automatic Telephone Dialing System ("ATDS"). A quick Pacer search produces no less than seven recent law suits filed by Plaintiff, at least six of which cover TCPA claims. Put bluntly, Plaintiff appears to be in the "business" of filing law suits and extracting settlements – this was certainly the approach Plaintiff took when he first contacted Express Text. Immediately following the initial status hearing, Express Text provided to Plaintiff the name and contact information for the Express Text customer, "WorldWin Events," who utilized Defendant's software platform to send out the alleged messages to Plaintiff. At the status hearing the Court granted Plaintiff leave to amend his Complaint, presumably to name the correct defendant WorldWin Events. Instead, Plaintiff filed an amended complaint on April 12,

2017, again against Express Text, only this time adding a jury demand. Since then, Express Text has provided a series of screenshots (essentially a virtual tour) of the Express Text software platform, in hopes that Plaintiff will recognize that he has named the wrong defendant and would stop wasting the Court's and Express Text's time and money. These screenshot are attached as Exhibit A to Ashish Patel's Declaration. It has become apparent to Express Text that, for Plaintiff, this case is not about right and wrong, but it is rather about extracting a financial settlement from Express Text.

**Express Text is entitled to summary judgment for three reasons**. **First**, the plain text of § 227(b) limits any private right of action to direct claims against the person that "***initiated***" or "***made***" the call, and vicarious liability, if any, only extends to those that exercise actual control over the telemarketing.

Express Text LLC is a mere platform. It does not compose text messages; it does not collect phone numbers; it does not compile phone numbers; it does not input phone numbers; it does not choose when or to whom to send messages; ant it does not initiate or create text messages. Express Text provides its customers a web-based application whereby its customers can utilize the Express Text software platform to compose and send their own text messages to recipients of the customers' choosing. Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SUMF") ¶¶ 6-18. Express Text is thus a software provider whose service enables a customer to upload both the content of the messages that the customer creates and the telephone numbers to which the customer chooses to send its messages. SUMF ¶¶ 6-18. Once the customer has uploaded its message content and its target telephone list, the customer clicks "send" or specifies the exact time that the text messages should be sent. *Id*. Express Text does not control the content, direction or timing of its customers' messages, but

simply acts as a conduit between its customers and the telecommunications carriers that deliver the text messages to the ultimate recipients selected by Express Text's customers. *Id*.

Express Text's role is thus akin to a common carrier that simply receives instructions and transmits its customers' content based on those instructions without alteration. Put differently, Express Text simply assists its customers with the "delivery" of its customers' own messages to the recipients they selected, in the same way that Yahoo! Mail serves as assisting in the delivery of email to recipients selected by the user, not Yahoo! As explained below, entities that merely assist with the delivering of calls or messages are not liable for violating the TCPA; the entity that chose to send a call or message to a given recipient is responsible for that call or message.

**Second**, the text messages in question were not sent using an ATDS, which is a statutory requirement for liability under the TCPA. The TCPA defines an ATDS as, "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C § 227(a)(1). Instead, Express Text uses a web-based platform from which its customers could only send text messages to specific, identified telephone numbers previously entered into the platform manually by the customers. The system does not and cannot be configured to send texts to random or sequentially generated phone numbers and it does not have the ability to generate or store such numbers. SUMF ¶¶ 6-18. The Express Text software platform requires a customer to log onto the platform, type the content of the text message, choose when to send the message out, load telephone numbers and choose which particular list of numbers would receive which message. *Id*. As the alleged texts at issue in this case were not sent using an ATDS, a requirement necessary to succeed on a TCPA claim, Express Text is entitled to summary judgment as a matter of law. *See* 47 U.S.C. § 227(a)(1).

Further, Plaintiff's claims additionally fail because the process involved in sending the text messages at issue in this case involved "human intervention" at several steps and is therefore not actionable. *See Wilcox v. Green Tree Servicing LLC*, 2015 WL 2092671 at \*5 (M.D. Fla. May 5, 2015) ("If [an employee] selects the numbers to be called, then the call would be made as the result of human intervention and the call would not be made using an ATDS"); *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1375-76, (S.D. Fla. 2014) (denying Plaintiff's motion for summary judgment because Plaintiff failed to show that Defendant's texts transmitted without human intervention); *Buslep v. Improv Miami, Inc*., 2012 WL 4932692 at \* 2-3 (S.D. Florida October 16, 2012) (denying Plaintiff's motion for summary judgment under nearly identical circumstances because proving Defendant stored customers' phone numbers in a database or sent out texts to multiple customers does not establish the Defendant used an ATDS).

Two courts have specifically considered and analyzed whether platforms functionally identical to Express Text's platform here constitute an ATDS, and both held that the system ***does not*** constitute an Automatic Telephone Dialing System under the TCPA. *See Jenkins v. mGage LLC*, 2016 WL 4263937 (N.D. GA)*; Luna v. Shac, LLC*, 122 F. Supp. 3d 936 (N.D. Cal. 2015).

**Third**, Plaintiff (or the previous holder of Plaintiff's phone number) provided his phone number to the Express Text customer, WorldWin Events, in response to WorldWin Events' Instagram promotion. SUMF ¶¶ 23-25.  More specifically, on January 17, 2015, at 1:22pm CST, Plaintiff's phone number at issue here (678-XXX-3733) was used to respond to a promotion run by WorldWin Events. SUMF ¶¶ 23-25.  To participate in the Instagram promotion, the user was required to text the term MIXX to 545454, and in fact, the Plaintiff (or previous holder of the phone number) did exactly that. SUMF ¶¶ 23-25. The promotional text messages Plaintiff received from the Express Text customer, therefore, were sent to Plaintiff with his consent.

## II. ARGUMENT

### A. Summary Judgement Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). A defendant can prevail on summary judgment merely by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [any essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, quoting Fed. R. Civ. P. 56(c).

Once a defendant meets its initial obligation of showing there is no genuine dispute of material fact, the onus shifts to the plaintiff to come forward with admissible evidence from which a reasonable jury could find that he has met his burden of proof. *Id.* at 322-23. It is not enough to produce "colorable" evidence; a plaintiff must proffer "significantly probative" evidence, and cannot rely on mere allegations. *Anderson*, 477 U.S. at 247-49, 256-57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986). Similarly, speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. *Roney v. Illinois Dept. of Transp*., 376 F. Supp. 2d 857, 864-65 (N.D. Ill. 2005) *aff'd*, 474 F.3d 455 (7th Cir. 2007). A plaintiff's naked assertion against sworn testimony does not raise a genuine issue of material fact; rather, it pits sworn testimony against speculation, conjecture self-serving conclusions. *Weeks v. Samsung Heavy Indus. Co., Ltd*., 126 F.3d 926, 934 (7th Cir.

1997); *Desir v. Bd. Of Co-op. Educ. Servs. (BOCES) Nassau Cnty.*, 803 F. Supp. 2d 168, 176 (E.D.N.Y. 2011) aff'd, 469 F. App'x 66 (2d Cir. 2012).

### B. No direct TCPA liability exists as Express Text did not make or initiate the text messages; it merely served as a conduit – a delivery system.

TCPA liability is limited to those who make the call; one who facilitates the transmission of calls does not "make" them. To hold otherwise would extend liability to every telecommunications carrier, software provider that enables the transmission of messages, and even to the manufacturers of fax machines! Plaintiff's apparent theory of the case is that any entity that has *some* involvement in the transmission of a text message, regardless of how passive that involvement is, can be held liable under the TCPA. But this novel interpretation of the TCPA conflicts with the express language of the TCPA itself, Congress' intent in enacting the TCPA, and subsequent FCC decisions. Plaintiff's allegations of Express Text's role in delivering its customers' messages, i.e., message transmission, even if true, fails to state a claim against Express Text. "Direct liability under the TCPA [] applies only to entities that 'initiate' the telemarketing calls" *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F.Supp.3d 765 (N.D.Ill 2014) (citing FCC Rulings and other cases). "A person or entity 'initiates' a telephone call when 'it takes the steps necessary to physically place a telephone call'" *Id.* (quoting FCC Ruling, 28 F.C.C.R. at 6583). Express Text is a passive software platform – it "initiates" no calls or messages whatsoever. SUMF ¶¶ 6-18

Plaintiff's allegations that Express Text assists with the delivery of text messages "on behalf of" its customers are insufficient to establish that Express Text violated the TCPA. Amended Complaint ¶¶ 1, 22, 32. Just as no one would accuse Verizon Wireless of violating the TCPA if a customer sent an unsolicited text message to a business prospect, or accuse Microsoft of "sending emails" in violation of the CAN-SPAM Act by providing its Outlook software to its

customers, Express Text does not "make" telephone calls when its customers use Express Text's software. Express Text thus simply does not "make any calls," on behalf of its customers or otherwise, for liability to potentially arise under the TCPA. The active decision to initiate a particular call or send a particular message is a threshold requirement of any TCPA claim, and Plaintiff fails to allege Express Text did anything of the sort here. See 47 U.S.C. § 227(b)(1)(A)(iii) (providing that it is unlawful "to ***make*** any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service") (emphasis added). It is undisputed that Express Text "makes" no calls/text messages and initiates no such transmissions. Ashish Patel Declaration ¶¶ 6-20. It is the Express Text customer, in this case WorldWin Events, who must create the text message, type it out, upload its contacts, and send the text messages through the software platform. *Id.*

Allowing Express Text to be liable for its customers' use of its platform would directly conflict with Congress' intent in enacting the TCPA. *See* S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968, 1997 (1991) ("The regulations concerning the use of [automatic telephone dialing systems] apply to the persons initiating the telephone call or sending the message and **do not apply to** the common carrier *or other entity that transmits* **the call or message and that is *not the originator or controller of the content of the call or message*.") (emphasis added). Contrary to Plaintiff's apparent theory, the TCPA thus does not impose liability on any entity simply because it was involved in the transmission of a text message. *See See Jenkins v. mGage LLC,* 2016 WL 4263937 (N.D. GA) (dismissing TCPA claim against platform provider similar to Express Text); *Luna v. Shac, LLC,* 122 F. Supp. 3d 936 (N.D. Cal. 2015) (dismissing TCPA claim against platform provider similar to Express Text); *Mendez v. C-Two Group, Inc., et al.,*

No. 13-cv-05914 (N.D. Cal. 2014) (dismissing TCPA claim against platform provider similar to Express Text); *Clark v. Avatar Technologies PHL, Inc.*, CIV No. H-13-2777, 2014 WL 309079, at *3 (S.D. Tex. Jan. 28, 2014) (dismissing TCPA claim with prejudice against VoIP provider accused of transmitting its co-defendant's messages because "Congress did not intend to allow secondary [TCPA] liability on telecommunications carriers based on an allegation of conspiracy" to transmit messages). Plaintiff's failure to plausibly allege that Express Text had any involvement in creating the content or recipient list of the text messages allegedly received by Plaintiff is thus fatal to his claim against Express Text.

Indeed, Express Text's role is similar to a common carrier or software provider that simply receives instructions and transmits its customers' calls or messages, without alteration, based on those instructions. Common carriers include telephone carriers such as AT&T and Verizon that similarly assist in the delivery of their customers' messages. Software providers include entities like "fax broadcasters."[1] When a consumer uses their cell phone to leave a voicemail on their friend's telephone, they are using the software on the operating system of the cell phone (e.g., Apple's iOS or Google's Android) and the facilities of the common carrier (e.g., AT&T, Verizon, or Sprint) to send the message. Neither the software provider nor the common carrier can be said to have "made" the call and left the message – it is the consumer that crafted and directed the message to the selected telephone number. To hold otherwise would extend liability to all those parties described above who merely facilitate the delivery of the messages.

Express Text's customers create and send messages to their self-compiled telephone lists at the time they choose, and simply use Express Text's software to transmit those messages

---

[1] Under the TCPA, a "fax broadcaster" is "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." 47 C.F.R. § 64.1200(f)(7).

rather than sending each message individually from their mobile device(s). Express Text does not create or alter the messages its customers send. In short, Express Text does not "make" or "initiate" any calls under the TCPA.

### C. No vicarious TCPA liability exists as to make Express Text liable for its customers' use of its software platform.

The Plaintiff alleges that Express Text sent the text messages on behalf of its customer WorldWin Events. Omitted from the Amended Complaint is any allegation that Express Text is vicariously liable under a theory of agency, apparent authority, or ratification. Courts have held that common law principles of vicarious liability apply to the TCPA. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-85 (C.D. Cal. 2012), quoting *Meyer v. Holley,* 537 U.S. 280, 285, 123 S. Ct. 824 (2003) ("[When] Congress creates a tort action, 'it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.'"); *see also* 2013 FCC Ruling at 6580 (FCC clarified that a seller who does not initiate a call nonetheless may be held vicariously liable under federal common law principles of agency for violations of § 227(b) and 227(c) that are committed by third-party telemarketers). However, such theories of liability must actually be pleaded in the operative complaint. *Mey v. Pinnacle Sec., LLC,* No. 5:11CV47, 2012 WL 4009718, *5 (N.D. W. Va. 2012); *see also Thomas*, 879 F. Supp. 2d at 1084 (plaintiff claiming a TCPA violation under a vicarious liability theory must demonstrate that the principal "controlled or had the right to control" the agent and "the manner and means of the [marketing] campaign" the agent conducted). Failure to properly plead a claim of vicarious liability when no theory of direct liability exists under the facts entitles a defendant to summary judgment.

Similarly, courts in this District have required a Plaintiff seeking to hold another vicariously liable under the TCPA to explicitly plead such a claim. *In Toney v. Quality*

*Resources, Inc.*, the court held that the plaintiff could not prevail under vicarious liability theories of apparent authority or ratification, as the plaintiff failed to plead such theories in her operative complaint**; allegations of "on behalf of" liability were held to be insufficient**. *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 744-45 (N.D. Ill. 2014). In *Smith v. State Farm Mutual Automobile Insurance Co.*, the plaintiff similarly failed to allege facts to support a claim of vicarious liability under Section 227(b) of the TCPA. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F.Supp.3d 765 (N.D.Ill 2014), discussing 2013 FCC Ruling.

In any event, vicarious liability under the TCPA requires a showing that the defendant **controlled the *manner and means* of the third-party vendor's marketing activities**. *See, e.g., Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226 (S.D. Fla. 2013) *rev'd in part*, 768 F.3d 1110 (11th Cir. 2014) (to satisfy the level of "control" necessary to establish vicarious liability under the TCPA, Plaintiffs must establish that defendants, as the principals, maintained control over, and supervised, key aspects of the undertaking.); *Thomas*, 879 F. Supp. 2d at 1081 (granting summary judgment for Taco Bell as plaintiff was unable to show "that Taco Bell controlled the manner and means by which the text message was created and distributed." Plaintiff failed to adduce evidence that Taco Bell "directed or supervised the manner and means of the text messages campaign," "created or developed the text message," or "played any role in the decision to distribute the message by way of a blast text."). Express Text is not vicariously liable as it did not control the manner or means of the conduct of its customer and, as such, Express Text cannot be held liable for the text messages that WorldWin Events sent using the Express Text software. Ashish Patel Declaration ¶¶ 21-24.

### D. Express Text's platform does not constitute an Automatic Telephone Dialing System.

The TCPA prohibits any person from making any call using any "Automatic Telephone Dialing System" ("ATDS"). The TCPA defines an ATDS as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Summary judgment is warranted in this case because the alleged text messages were not sent to Plaintiff using an ATDS. Express Text's platform does not constitute an "automatic telephone dialing system" ("ATDS"), as defined by the TCPA, and Plaintiff cannot prove the contrary. The Platform does not dial any telephone numbers and is not a telephone system. SUMF ¶¶ 6-18. It is a web-based platform consisting of a core infrastructure and computer programs which perform content routing services via connections with the telephone carriers and with the company's system. *Id*. To initiate a text message, an Express Text customer, such as WorldWin Events, must log-in to the platform by manually inputting its assigned customer credentials. *Id*. Once logged-in, the customer must then manually type the content of the text message directly into a content box located on the platform. *Id*. The customer must also designate the specific telephone numbers to which the message will be sent and then direct the platform to either route the message immediately or at a specified date and time determined and manually entered by the customer. *Id*.

Two courts have specifically considered and analyzed whether platforms functionally identical to Express Text's platform here constitute an ATDS, and both held that the system ***does not*** constitute an Automatic Telephone Dialing System under the TCPA. *See Jenkins v. mGage LLC*, 2016 WL 4263937 (N.D. GA)*; Luna v. Shac, LLC*, 122 F. Supp. 3d 936 (N.D. Cal. 2015).

**1. The platform does not have the capacity to produce or store telephone numbers to be called using a random or sequential number generator.**

The platform does not have the capacity to produce or store telephone numbers to be called using a random or sequential number generator. SUMF ¶¶ 6-18. The platform cannot generate any telephone numbers, be they random, sequential, or otherwise, to receive calls or text messages. *Id*. The platform is only able to route text messages to telephone numbers that are compiled by Express Text customers, and only if the customer specifies that a particular message should be sent to that number by manually making such a selection on the platform. *Id*. Simply stated, the platform is not capable of producing or storing random or sequential numbers and it cannot send messages to random or sequential numbers. It can only be used to send text messages to specific, identified phone numbers that have been manually uploaded into the platform. *Id*.

## 2. Express Text's platform requires human intervention.

On June 18, 2015, the FCC issued a declaratory ruling and order reiterating "that the basic functions of an autodialer are to dial numbers without human intervention..." 30 FCC Rcd. 7961 ¶ 17 (July 10, 2015) ("2015 FCC Order"). The *Luna* court thoroughly discussed the 2015 FCC Order, **and concluded the level of human intervention required to send text messages through a system similar to Express Text precluded liability**. *See* 122 F. Supp. 3d at 939-40. The *Jenkins* court came to the same conclusion after analyzing the system's human intervention requirements ("the 2015 FCC Order underscored that a defining characteristic of an autodialer is the ability to dial numbers without human intervention"). See also Derby v. AOL, Inc., No. 15-cv- 00452 (N.D. Cal. 2015) ("the 2015 [FCC] Order reiterates that the basic functions of an autodialer are to dial numbers *without human intervention* and to dial thousands of numbers in a short period of time") (emphasis in the original); *Strauss v. CBE Grp., Inc.*, ___ F. Supp. 3d ____, 2016 WL 1273913 (S.D. Fla. Mar. 28, 2016) ("[t]o determine whether a dialer is a

predictive dialing system, and therefore an ATDS, the primary consideration is whether human intervention is required at the point in time at which the number is dialed"); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1373 (S.D. Fla. 2014) (explaining that "defining characteristic" of ATDS is "capacity to dial numbers without human intervention").

Express Text's platform does ***not*** send text messages automatically. To the contrary, it requires human intervention to send text messages to recipients. In this case, human intervention was required in multiple, essential steps throughout the process of routing WorldWin Events text messages to the ultimate recipients, including Plaintiff. Express Text did not automatically upload Plaintiff's telephone number; rather WorldWin Events obtained Plaintiff's phone number when Plaintiff responded to a WorldWin Events promotion, as discussed below. The text messages that were sent to Plaintiff were not automatically created by Express Text's platform, but rather WorldWin Events drafted the content of the text messages and sent them. Amended Complaint ¶¶ 1, 22, 32; SUMF ¶¶ 6-18. Express Text's platform did not automatically or randomly select Plaintiff's telephone number to receive text messages, but rather WorldWin Events designated the recipients by manually selecting a customer-created list to which to send the text messages. SUMF ¶¶ 6-18. Most importantly, Express Text's platform did not automatically send the text messages to plaintiff – instead, WorldWin Events was required to manually click "send" once a message was ready to be routed or, in the alternative, WorldWin Events would have to select the precise date and time at which the text message should be routed. *Id.*

In summary, it is simply not possible to use Express Text's platform to generate random or sequential telephone numbers or to automatically send messages to such numbers. Further, text messages cannot be routed to individuals' cell phones from Express Text's platform without

substantial human intervention at every step of the message creation and transmission process. *See Id.*

### E. Plaintiff Expressly Consented to Receive Text Messages.

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227 (b)(1)(A) (emphasis added). Accordingly, making calls *with* the prior express consent of the called party is not unlawful. *See, e.g., Roberts v. Paypal, Inc.*, 621 Fed.App'x. 478, 478-79 (9th Cir. 2015). Plaintiff (or the previous holder of Plaintiff's phone number) provided his phone number to WorldWin Events, in response to WorldWin Events' Instagram promotion. SUMF ¶¶ 23-25. More specifically, on January 17, 2015, at 1:22pm CST, Plaintiff's phone number at issue here (678-XXX-3733) was used to respond to a promotion run by WorldWin Events. SUMF ¶¶ 23-25. To participate in the Instagram promotion, the user was required to text the term MIXX to 545454, and in fact, the Plaintiff (or previous holder of the phone number) did exactly that.

"[M]any federal district courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the act." *Pietzak v. Microsoft Corporation,* No. 2:15-cv-05527-R-JEM, 2015 WL 7888408, at *1 (C.D. Cal. Nov. 17, 2015) (*appeal docketed*, Ninth Circuit Court of Appeals Docket No: 15- 56900); *see also Emanuel v. Los Angeles Lakers, No. CV 12-9936-GW(SHx),* 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013) (the plaintiff expressly consented to receiving a text message from the defendant when he first sent a text message to the defendant); *Ibey,* 2012 WL 2401972, at *3 (the plaintiff "expressly consented to

contact by Defendant when he initially texted . . . Defendant"); *Pinkard*, 2012 WL 5511039, at *4 ("express consent exists when an individual voluntarily provides her telephone number to another"); *Gutierrez v. Barclays Group*, No. 10-cv-1012 DMS (BGS); 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011) (the plaintiff gave "prior express consent" for the defendant to use cellular numbers when the numbers were listed on an account application).

Because Plaintiff provided his phone number to WorldWin Events as part of a promotion, the text messages received in response to Plaintiff providing his phone number should not be actionable under the TCPA.

## III.    CONCLUSION

For the foregoing reasons, Express Text respectfully requests that the Court grant its Motion for Summary Judgment.

Dated: April 26, 2017                              Respectfully submitted,

**LAPIN LAW FIRM**

/s/ Moshe D. Lapin
_____

By:     Moshe D. Lapin (Admitted *pro hac vice*)
Lapin Law Firm
300 E. Lombard St., Suite 840
Baltimore, MD 21202
T: (888) 858-0340
F: (212) 320-0248
moshe@lapinlegal.com

*Attorney for Defendant*

Local Counsel Pursuant to LR83.15:
Eugene N. Traunfeld
500 Skokie Blvd. Suite 150
Northbrook, IL 60062
T: (312) 213-8095
traunfeldlaw@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2017, I electronically filed or caused to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois Eastern Division, the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT by using the CM/ECF system, which will send notification of such filing(s) to all counsels of record.


/s/ Moshe D. Lapin
_____

By:     Moshe D. Lapin (Admitted *pro hac vice*)
        Lapin Law Firm
        300 E. Lombard St., Suite 840
        Baltimore, MD 21202
        T: (888) 858-0340
        F: (212) 320-0248
        moshe@lapinlegal.com