*aEE*

**FILED**

*LCW*

**JUN 21 2017**

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RICKY R. FRANKLIN | ) | Civil Action No: 1:16-cv-09660 |
| | ) | |
| Plaintiff, | ) | **JURY DEMAND** |
| | ) | |
| v. | ) | **Honorable Robert W. Gettleman** |
| | ) | |
| | ) | **Magistrate: Maria Valdez** |
| EXPRESS TEXT LLC | ) | |
| | ) | |
| Defendant | ) | |

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

The Defendant filed its motion for Summary Judgment pursuant to this Court's order, Plaintiff now timely responds.

## I. Introduction

Express Text LLC., (hereinafter, EXP) begins its Motion for Summary Judgment by making the intrepid and unfitting assertion that plaintiff is a "serial plaintiff" based on a contrived claim (Def. Mem Law., p1). This is completely irrelevant to the legal issues in this case, and Plaintiff will not indulge Defendant or Defendant's attorneys in such antics and choses instead to concentrate on the legal issues before the Court. The record shows that EXP primary arguments in support

of summary judgment—(i) that EXPs does not control who sends out texts messages and their platform is simply a database of its clients subscribers, (ii) that its system does not qualify as an Automatic Telephone dialing system (ATDS), (iii) that it had consent to text Plaintiff and Human Intervention was involved— completely miss their mark. At the very least, it's clear there are disputed issues of material fact as to the evidence upon which those arguments are based.

In the present action, EXP's Motion for Summary Judgment provides no basis for granting summary judgment in EXP's favor. All three grounds raised by EXP fail, since § 227(b)(1)(A) applies to "any call" with an automatic telephone dialing system ("ATDS") without prior express consent; the equipment used by EXP to call Plaintiff's cell phone constitutes and ATDS (or at the very least there is a genuine dispute over that material fact), and EXP is therefore subject to the provisions of the Telephone Consumer Protection Act et seq ("TCPA").

EXP's Platform consists of internet-to-phone text messaging system from a database or list of numbers. This system is able to upload and send at least 5,000 bulk messages at one time either by (1) clicking a send now button, or (2) scheduling to send later button from a list of numbers. (Def Exh A, p5, p11). Using the Defendant's own exhibits, allows for summary judgment to be denied, as an issue of material fact exist. The FCC has ruled and reaffirmed on several declaratory rulings that Internet-to-phone text messaging fall within the purview of

the TCPA. As well as any system that dials from a set list of numbers, constitutes an ATDS.

Finally, EXP's contention that its system requires a level of "human intervention" to operate such that it falls outside the statutory definition of an ATDS is equally dubious. For one, courts throughout the country have consistently held that the types of human activities EXP points to—i.e., loading into the system computer-generated list of numbers to call and clients logging into their workstations before the system automatically routes calls to them—do not rise to the level of "human intervention" contemplated by the TCPA. Not surprisingly, other courts have considered similar arguments with respect to the dialing system and found that it fits neatly into the definition of an ATDS, and EXP has stipulated to that fact in other matters. Ultimately, EXP's argument that the system should not be considered an ATDS is nonsensical.

For these reasons and as explained further below, EXP's motion for summary judgment should be denied in its entirety.


## II. The Telephone Consumer Protection Act ("TCPA")

The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the

home and to facilitate interstate commerce by restricting certain uses of facsimile

machines and automatic dialers." Satterfield v. Simon & Schuster, Inc.,

569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991)). In

particular, the TCPA makes it illegal:

(A) to make any call (other than a call made for emergency purposes or made with
the prior express consent of the cal (A) to make any call (other than a call made for
emergency purposes or made with the prior express consent of the called
party ) using any automatic telephone dialing system or an artificial or prerecorded
voice—

(iii) to any telephone number assigned to a paging service, cellular telephone
service, specialized mobile radio service, or other radio common carrier service, or
any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphases added). Congress authorized a private

right of action to enforce the Act. See 27 U.S.C. § 227(b)(3). Additionally,

Congress directed the Federal Communications Commission ("FCC") to "prescribe

regulations to implement the requirements of" the TCPA. See 27 U.S.C. §

227(b)(2).

The TCPA defines "automatic telephone dialing system" as "equipment which

has the capacity—(A) to store or produce telephone numbers to be called, using a

random or sequential number generator; and (B) to dial such numbers." In the

2003 TCPA Order, the Commission found that, in order to be considered an

"automatic telephone dialing system," the "equipment need **only** have the 'capacity

to store or produce telephone numbers.'" The Commission stated that, even when

4

**dialing a fixed** set of numbers, equipment may nevertheless meet the autodialer definition. 47 U.S.C. § 227(a)(1); *see also* 47 C.F.R. § 64.1200(f)(2) ("The terms *automatic telephone dialing system* and *autodialer* mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.").

## III. Factual Background

Plaintiff began receiving text messages from the Defendant on July 17, 2015. (Amen Comp,§ 21, See Exhibit A). Thereafter, Plaintiff received at least One-Hundred Fifteen more text messages from the Defendant EXP. (Amend Comp, ¶22, Franklin Decl F2). All or some of the text messages were sent using and Automated Dialing System and without human intervention. (See Exhibit G video, Franklin Decl F3). On a "call-to-action" text, the Defendant is allowed a one-time only text, sent immediately in response to a specific request by the consumer. *See…Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7971, 7972, para 106, (2015)* Citing… "we find that a one-time text sent in response to a consumer's request for information does not violate the TCPA or the Commission's rules so long as it: (1) is requested by the consumer; (2) is a one-time only message sent immediately in response to a specific consumer request; and (3) contains only the information requested by the consumer with no other

5

marketing or advertising information". Each of the 115 text messages did not

include the necessary opt-out language...i.e Stop or Quit, that the FCC ruled must

be included in each message. Franklin Decl F4). Additionally, Defendant EXP did

not have the Plaintiffs prior express written consent to contact Plaintiff on his

cellular phone over 115 times. Franklin Decl F5). On July 18, 2015 Plaintiff began

to receive additional text messages after the one-time only text message allowed

that continued until September 2016. Franklin Decl F6). On September 19, 2016

Plaintiff text the word "help"...an automated response came from the system, and

Plaintiff called to ask to be removed from the system. (See Exhibit B, Franklin

Decl E7). On September 21, 2016 Plaintiff was contacted by a employee from

EXP and the representative immediately removed Plaintiffs number from its

database. (Franklin Decl E8). Thereafter, each time the Plaintiff text the system,

Plaintiff received an automated response from EXP Platform. (See Exhibit C

Screenshot, Decl Franklin F9, Exhibit G video)

**IV. Argument**

Summary judgment is appropriate if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law. Spurling v.C & M Fine Pack, Inc., 739 F.3d 1055, 1060 (7th Cir. 2014). A

genuine dispute as to any material fact exists if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v.

6

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary

judgment has the burden of establishing that there is no genuine dispute as to any

material fact. See Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986). In

determining whether a genuine issue of material fact exists, the Court must

construe all facts and reasonable inferences in the light most favorable to the

nonmoving party. See CTL ex rel. Trebatoski v. Ashland School District, 743 F.3d

524, 528 (7th Cir. 2014). Summary judgment will not lie if the dispute about a

material fact is genuine.  At the summary judgment stage, the trial judge's function

is not himself to weigh the evidence and determine the truth of the matter, but to

determine whether there is a genuine issue for trial. *Id at 243*

## A.  Defendant EXP Controls The Messages It Sends Out And Its System Does Generate Automated Messages

First, Defendant EXP claims to not control the text messages that its systems

sends out from a database.  This claim fails and summary judgement cannot be

granted to EXP.  Under its own guidance and rules, EXP controls the ability to

delete, remove, stop, or overwrite any of its users "clients" text messages at any

time.  (See Def terms of use, Exhibit D, para 13) Further, EXP "terms of use" state

that Defendant EXP validates the subscriber and is the controlling entity to

designate a term to stop all messages from being sent. *Id at 6*

7

For the sake of arguing in EXP's favor, let's assume that all 115 messages sent out by another third party, were sent manually or with human intervention. The Plaintiff's reply message sent on September 19, 2016 of "Help" (See Exhibit C) was responded to by EXPs system in less than a second. To illustrate the dynamics of this system, Plaintiff introduces unconverted evidence, to this day, of how this system sends back automated replies that lack human intervention. (See Exhibit G, Video of System).

All the case law that EXP cites is irrelevant to this case, because the evidence shows that no human intervention was involved with sending out replies to each of the Plaintiff's request. The FCC has clarified with specificity that the commission's stance on auto dialers or Predictive dialers has been reaffirmed from previous rulings. ***See…Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7971, 7972, para 10, 11 (2015)*** "We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") **even if it is not presently** (emphasis added) used for that purpose, including when the caller is calling **a set list** of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason". Thus, Plaintiff has produced

8

evidence that presents a issue of material fact and Defendant's summary judgment must be denied.

Defendant EXP's summary judgment also fails, because the FCC has ruled in a Press Release that [e]quipment used to send Internet-to-phone text messages is an autodialer", which is sufficient by itself to find that the Defendant's equipment is an ATDS. (See Exhibit, E) For both reasons proved here by the Plaintiff, EXP's summary judgment must be denied and discovery allowed to continue in this case.

## B. Defendant Express Text System is an Automated Dialing System

In Supra, Defendant EXP's system qualifies as an autodialer because it is used to send Internet-to-phone text messages. EXP's equipment qualifies as an ATDS and therefore summary judgment must be denied the Defendant. The FCC further explained the systems as it relates to autodialers. "We agree with commenters who argue that the TCPA's use of "capacity" does not exempt equipment that lacks the **"present ability"** to dial randomly or sequentially. We agree that Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need **only** have the **"capacity"** to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA". *Id at 15*

9

The Defendant tries to pass its ownership of the ability to send text messages off on another 3rd party. This legal conclusion is also is a detriment to the EXPs position. The FCC further went on to clarify situations like the present case. We also find that parties cannot circumvent the TCPA by dividing ownership of dialing equipment. *Id at 23*. We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities. *Id at 10* We conclude that such equipment can be deemed an autodialer if the net result of such voluntary combination enables the equipment to have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. The fact that two separate entities have voluntarily entered into an agreement to provide such functionality does not alter this analysis. The TCPA uses the word "system" to describe the automated dialing equipment that is defined in section 227(a)(1) of the Act. The Commission noted, in concluding that a predictive dialer meets the definition of an autodialer, that "[t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers." As a result, the Commission has recognized that various pieces of different equipment and software can be combined to form an autodialer, as contemplated by the TCPA. The fact that these individual pieces of equipment and software might be separately owned does not change this analysis. *Id at 24*

10

These facts, coupled with a plethora of issues surrounding EXP's equipment are enough in itself to prevent summary judgment in favor of the Defendant and therefore summary judgment should be denied.

## C. Express Text Did Not Have Plaintiffs Consent to Call His Cellular Phone

We next turn to the consent issue that Defendant EXP tries to rely on for summary judgment. This claim by the Defendant must fail, because the FCC has strengthened rules that govern how businesses can text clients. Defendant claims that Plaintiff text to receive a Instagram promotion (Mem Law, SUMF 23-25) It is important to note, that Plaintiff does not have an Instagram account and has never participated in a program. Assuming arguendo that Plaintiff did participate in this so called Instagram promotion. / in response to a specific consumer request; and (3) contains only the information requested by the consumer with no other marketing or advertising information. *Id at 106* The Defendants relying on case law that's contrary to the Commission is a detriment to the consent theory that Defendant EXP attempts to rely on. Sticking to the Defendants theory, EXP would have had to have consent for each of the 115 other text messages sent to Plaintiff.

Plaintiff has never given the Defendant consent to call his cellular phone using prohibited equipment. Under longstanding Commission precedent, if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent.

11

*See ACA Declaratory Ruling*, 23 FCC Rcd at 565, para. 10 (concluding that "[s]hould a question arise as to whether express consent was provided, the burden will be on [the caller] to show it obtained the necessary prior express consent").

The Defendant has not, and cannot produce any evidence that Plaintiff consented to the 115 text messages sent to his cellular phone and therefore summary judgment should be denied.

## D. All The Text Messages Did Not Require Human Intervention

Lastly, Defendant states that all of text messages required human intervention. This matter fails, because from the Plaintiffs evidence (See, Exhibit C, G) some of the text messages that were automated responses to the Plaintiff requests. Again, for the sake of the Defendants argument that these messages required human intervention...the fastest typist in the world was recorded in 1946 at 216 words per minute. See...www.ratatype.com/learn/average-typing-speed. If the Defendant hired this person to respond to incoming messages, this person could only type 3.6 words per second. The responses presented by the Plaintiffs exhibits and video (See, Exh C, G) show and prove that no human could type a sentence in less than a second. Because the replies to the Plaintiffs text messages lacked human intervention, summary judgment should be denied.

## V. Conclusion

12

Plaintiff has conclusively established that: (1) Defendant is responsible and controls the ability to send text messages, (2) Defendant EXP Platform qualifies as an ATDS, (3) Defendant EXP did not have prior express written consent to contact Plaintiff, (4) Some or all the Defendant messages lacked human intervention.

Because there is a genuine dispute of material facts the Defendant's motion for summary judgment on Plaintiff's TCPA claim should be denied. The dispute bears directly on the elements of a claim under the TCPA. See 47 U.S.C. § 227(b)(1)(A)(iii); see also Caroll v. Lynch, 698 F. 3d at 564 (7th Cir. 2012)(whether a fact is material depends on the underlying substantive law that governs the dispute).

For the reasons stated above, the Defendant's motion should be denied and the aforementioned case should be allowed to move forward and be tried on its merits in the presence of a jury.

Respectfully submitted,

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281
rrfrank12@hotmail.com

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent via mail

on June 19th  2017 to Defendant's Counsel listed below:

Moshe D. Lapin (Admitted *pro hac vice*) Lapin Law Firm
300 E. Lombard St., Suite 840
Baltimore, MD 21202
T: (888) 858-0340
F: (212) 320-0248 moshe@lapinlegal.com

Eugene N. Traunfeld
500 Skokie Blvd. Suite 150
Northbrook, IL 60062
T: (312) 213-8095 traunfeldlaw@gmail.com

## ATTORNEYS FOR DEFENDANT

## EXPRESS TEXT, LLC

# EXHIBIT A

Text Message    Exhibit A

Jul 17, 2015, 6:00 PM

TONIGHT: Use this
text for Free Entry
until 12AM at GOLD
ROOM w/Quinn &
Jukebox,Frank Ski
& DJ EClazz!
Upscale
Dress(2416
Piedmont Ave.
Atl,GA)
FridayRecess.com

Jul 18, 2015, 5:51 PM

A-1

Jul 25, 2015, 8:01 PM    Exhibit  A-2

TONITE: Use this
txt for Free Entry til
12AM @ SUITE
feat. Quinn &
Jukebox, Guest DJ
Skillz + G-Nice &
Comp Bud Light!
(375 Luckie St.
Atl,GA)
SaturdayMIXX.com

Aug 1, 2015, 7:26 PM

TONITE: Use this
text 4 Free Entry til    A-2

Page 1 of 2

Exhibit B

## Untitled



+1...

Mon 6/5/2017 2:54 PM

To:rrfrank12@hotmail.com <rrfrank12@hotmail.com>;

 

 ●●○○○ AT&T 🛜      **2:46 PM**      @ ✈ ✶ 94% ▬▬ 

**‹       545-454       ⓘ**

Mon, Sep 19, 1:04 PM



**IA SMS alerts. 2 msgs/mo. Info: help@incriminatora udio.com. Reply STOP to STOP. Msg & Data Rates May Apply.**

Wed, Apr 5, 10:40 AM

B - 1

# EXHIBIT C

Exhibit C

 ●●○○○ AT&T 📶    12:21 PM    📷 🚀 🔵 67% 🔋

**‹**     **545-454**     

Wed, Apr 5, 10:40 AM



**Express Text Alerts:
5 alerts/wk. More
Info:
888.351.8398.
Reply STOP to Opt
Out. Msg&Data
rates may apply.**

Tue, Apr 11, 11:32 PM



**Express Text Alerts:
5 alerts/wk. More
Info:
888 351 8398**

        

Sent from my iPhone
RF

Exhibit C-1

Case: 1:16-cv-09660 Document #: 25 Filed: 06/21/17 Page 21 of 41 PageID #:166

Exhit C    https://_____/1/messages/4764



Subject: Screenshot of auto reply express text llc

From: rrfrank12@hotmail.com
To: rrfrank12@yahoo.com
Date: Monday, June 19, 2017, 12:36:00 PM EDT

●●○○○ AT&T 📶          12:21 PM          @ ✈ ⚡ 67% 🔋

⟨                **545-454**                ⓘ



## Express Text Alerts: 5 alerts/wk. More Info: 888.351.8398. Reply STOP to Opt Out. Msg&Data rates may apply.

Tue, Apr 11, 11:32 PM



## Express Text Alerts: 5 alerts/wk. More Info: 888.351.8398. Donly STOD to Ont

            

C-2

Exhibit C    https://_____/d/folders/1/messages/4764

●●○○○ AT&T 🔋    12:21 PM    @ ✈ ✳ 67% ▬▷

‹    **545-454**    



Express Text Alerts:
5 alerts/wk. More
Info:
888.351.8398.
Reply STOP to Opt
Out. Msg&Data
rates may apply.



Sorry, your
response is
unrecognized.
Please reply back
with a valid
keyword.

  

C-3



Exhibit C

Exhibit C 4

Exhibit C



# EXHIBIT D

Exhibit D

Contact Us (https://app.expresstext.net/ExpText/contact)

888.351.8398

(HTTPS://APP.EXPRESST

**EXPRESSTEXT**

(HTTP://WWW.EXPRESSTEXT.NET)

ABOUT EXPRESS TEXT (HOME.HTML#ABOUTUS)     WHY USE SMS
(WHYUSESMS.HTML#WHYUSESMS)     HOW IT WORKS
(HOWITWORKS.HTML#HOWITWORKS)     FEATURES
(FEATURES.HTML#FEATURES)     WHAT DOES IT COST?
(PRICING.HTML#PRICING)

EXPRESSTEXT.NET TERMS OF USE

**TRY IT FOR FREE**

# Terms Of Use

1. **ACCEPTANCE OF TERMS**

   Express Text, LLC, an Illinois limited liability company (hereinafter referred to as "Express Text", "we," "us" or "our"), makes this website, www.ExpressText.net (the "Site"), including all information, documents, communications, files, images, text, videos, audio files, graphics, software, products and services available through the site (collectively, the "Materials") and all services operated by Express Text and third parties through the site (collectively, the "Services"), available for your use subject to the terms and conditions set forth in this document and any changes to this document that Express Text may publish from time to time (collectively, the "Terms of Use" or "Agreement"). "Express Text Content" as used in this Agreement means all content created and provided by Express Text through this Site. "User Content" means all submissions you make through Express Text to be transmitted to Subscribers and all content posted on the Site by you or any other user of the Site. As used in this Agreement "Subscriber" refers to those individuals requesting your content and to whom your content is sent through Express Text. The terms "you" and "yours" refers to all users of the Site, and it also includes (for all purposes, including indemnification and representations) the company and/or entity on whose behalf you are using the Site or sending messages through the Site.

D-1

Exh D - 2

Express Text reserves the right to change the Terms of Use and other guidelines or rules posted on the Site from time to time at its sole discretion. Your continued use of the Site, or any Materials or Services accessible through it, after such notice has been posted constitutes your acceptance of the changes. Your use of the Site will be subject to the most current version of the Terms of Use, rules and guidelines posted on the Site at the time of such use. You should periodically check these Terms of Use to view the then current terms. If you breach any of the Terms of Use, your authorization to use this Site automatically terminates. You agree to fully adhere to the MMA (Mobile Marketing Association) guidelines as they are outlined at http://www.mmaglobal.com/bestpractices.pdf and as they may be amended and revised from time to time. To the extent that your failure to adhere to such rules causes us any harm or injury, you will fully indemnify us for such expenses, including attorney fees and court costs relating to any defense and/or collection.

BY ACCESSING AND USING THIS WEBSITE; COMPLETING ANY REGISTRATION PROCESS ASSOCIATED WITH EXPRESS TEXT; VALIDATING AND/OR REGISTERING YOUR MOBILE PHONE FOR ANY SERVICES OFFERED THROUGH THE SITE; RECEIVING A PASSWORD FOR SERVICE; OR OPTING IN TO ANY EXPRESS TEXT SERVICES AND/OR CLIENT SERVICES; YOU ARE STATING THAT YOU AGREE THAT YOU HAVE READ, UNDERSTAND, AND ACCEPT ALL OF THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT.

2. **COMPLIANCE WITH APPLICABLE LAWS AND REGULATIONS**

By utilizing the Services or making use of the Site in any manner, you are expressly representing that you are and will remain in full and absolute compliance with the Telephone Consumer Protection Act (TCPA) and all related regulations. Among other items, the TCPA requires that you obtain a Subscriber's prior express written consent before calling or sending such Subscriber a text message. You are hereby representing that you are familiar and in full compliance with the applicable provisions of the TCPA, regulations and the Federal Communications Commission's rules interpreting the TCPA and related regulations. Without limiting the foregoing, you agree that in your acquisition of phone numbers you have and will remain in full compliance with the TCPA and applicable regulations. You also recognize the TCPA will be amended as of October 16, 2013, and will remain fully compliant with such amendment and any future amendments. You expressly represent that you will not send any promotional advertising to any subscribers whose contact information was obtained by means other than in full compliance with the TCPA, as amended. Without limiting any other provision in this Agreement, you understand and agree that you will fully indemnify us in the event that we are compelled to defend ourselves do to your violations of the TCPA or any applicable law or regulation.

3. **SERVICE LIMITATIONS**

You understand that the service we provide through the Site is text messaging platform software. We provide no advertising strategy services or marketing services. We do not review or assist you with the creation or drafting of your text messages. We serve merely as a conduit and carrier of your text messages. Consequently, we will not review or approve your messages or practices for compliance with applicable laws or regulations. You are entirely responsible for any applicable laws and regulations (including the TCPA) relating to calling and sending text messages.

4. **ENFORCEMENT**

If for any reason a court of competent jurisdiction finds any provision of these Terms of Use, or portion thereof, to be unenforceable, that provision shall be enforced to the maximum extent permissible so as to effect the intent of the parties as reflected by that provision, and the remainder of the Terms of Use shall continue in full force and effect. Any failure by Express Text to enforce or exercise any provision of these Terms of Use or related right shall not constitute a waiver of that right or provision.

Case: 1:16-cv-09660 Document #: 25 Filed: 06/21/17 Page 28 of 41 PageID #:166

Terms of Use | SMS Advertising & Marketing Campaigns | Bulk SMS | Mobile Advertising   Page 3 of 9

*Exh D3*

### 5. ELIGIBILITY

You must be at least 18 years old to be eligible to use the Services (21 years of age for designated venues). However, if you are at least 13 years old but not yet 18, you may use the Services only if you have your parents' or guardians' prior permission (except for venues where an age requirement is expressed). No one under age 13 may use the Services under any circumstances. By clicking "Validate" or "Submit" on any ExpressText.net website form, or submitting any messages to ExpressText.net through your mobile phone, you are representing that you are at least 18, or that you are at least 13 years old and have your parents' permission to register for the Services. You also certify that you are the owner of the mobile device/mobile number for which you are requesting services. You certify that you will not send unsolicited text messages/SPAM to any person(s) through any ExpressText.net service. Express Text records Internet IP addresses of each visitor/user, and will prosecute violators to the fullest extent of the law.

### 6. EXPRESS TEXT SUBSCRIBERS

You, our client, understand that Express Text will require each Subscriber who signs up to receive your broadcast alerts through Express Text to opt-in to become a Subscriber on your database. Subscribers opt-in by taking the prescribed action, such as sending a text message as directed by an advertisement. Before adding a Subscriber to your database of subscribers, we reserve the right to validate that the prospective Subscriber is the owner of the phone for which the Subscriber is requesting your broadcasting service. Upon the successful transmission of your broadcast to your database, Express Text will notify you (through a pop-up message) that your transmission was successful. Express Text provides you with reporting and monitoring tools to enable you to track transmissions sent via Express Text.

A Subscriber who signs up for a continual alert will remain on our client's database of subscribers and will continue to receive broadcasts until the Subscriber unsubscribes by (1) completing the online opt-out form, at which time the Subscriber immediately will be removed from the subscriber database, or (2) replying in text form to an incoming message with a term designated by Express Text. Please review our opt-out directions on the Site for more information about the designated opt-out term. When you, the Subscriber, registers to receive Express Text Services, including services offered by any of our Clients, you are agreeing to also receive the current and all future Services in conjunction with your requests. By sending/receiving text messages through our service, you understand that some messages may not be delivered due to various technical, network, and/or other reasons. Express Text will not be held responsible or liable for undelivered messages. Although 99% of messages reach their intended recipient, we cannot guarantee delivery of any message sent through our services.

### 7. INTELLECTUAL PROPERTY; LIMITED LICENSE TO USERS

The Materials and Services on this Site, as well as their selection and arrangement, are protected by copyright, trademark, patent, and/or other intellectual property laws, and any unauthorized use of the Materials or Services at this Site may violate such laws and these Terms of Use. Except as expressly provided herein, Express Text does not grant any express or implied rights to use the Materials and Services. You agree not to copy, republish, frame, reverse engineer, or create derivative works based on the Site, its Materials, or its Services or their selection and arrangement, except as expressly authorized herein. In addition, you agree not to use any data mining, robots, or similar data gathering and extraction methods in connection with the Site.

In addition to the Materials and Services offered by Express Text, this Site may also make available materials, information, and services provided by third parties (collectively, the "Third Party Services"). The Third Party Services may be governed by separate license agreements that accompany such services. Express Text offers no guarantees and assumes no responsibility or liability of any type with

Exh   D-1

respect to the Third Party Services or products. You agree that you will not hold Express Text responsible or liable with respect to the Third Party Services or seek to do so.

Except as expressly indicated to the contrary elsewhere on this Site, you may view, download, and print the Express Text Content and User Content available on this Site subject to the following conditions:

1. The Express Text Content and User Content may not be modified or altered in any way.
2. You may not remove any copyright or other proprietary notices contained in the Express Text Content and User Content.
3. Express Text reserves the right to revoke the authorization to post, list, view, download, and print the Express Text Content and User Content available on this Site at any time, and any such use shall be discontinued immediately upon notice from Express Text.
4. The rights granted to you constitute a license and not a transfer of title.

The rights specified above to view, download, and print the Express Text Content and User Content available on this Site are not applicable to the design or layout of this Site. Elements of this Site are protected by trade dress and other laws and may not be copied or imitated in whole or in part.

8. **TRADEMARK INFORMATION**
The trademarks, logos, and service marks, including the "Express Text" trademark ("Marks") displayed on this Site are the property of Express Text or other third parties. You are not permitted to use the Marks without the prior written consent of Express Text or such third party that may own the Marks.

9. **LICENSE TO EXPRESS TEXT FOR USER CONTENT**
By submitting any User Content to this Site you grant Express Text the following type of license: For User Content that is the result of your creative efforts and which is intended to be displayed on the Site, you grant Express Text a worldwide, royalty-free, non-exclusive license to modify (for purposes of formatting, maintenance, or Site administration) and reproduce such User Content. You also grant Express Text the right to distribute and publicly display and perform such User Content for the purpose for which such User Content was submitted to the Site. ExpressText.net may, at its sole discretion, and without compensation to any user, make Service web pages and website content available for sponsorship and branding by Express Text clients or other third parties.

10. **DIGITAL MILLENNIUM COPYRIGHT ACT**
If you are a copyright owner or an agent thereof and believe that any User Content or other content infringes upon your copyrights, you may submit a notification pursuant to the Digital Millennium Copyright Act ("DMCA") by providing us with the following information in writing (see 17 U.S.C 512(c)(3) for further detail): A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site; Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled and information reasonably sufficient to permit the service provider to locate the material; Information reasonably sufficient to permit us to contact you, such as an address, telephone number, and, if available, an electronic mail; A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and A statement that the information in the notification is accurate, and under penalty of perjury, that you are authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. You may send the notification to Support@ExpressText.net.

D.-4

Exh  D-S

### 11. PROHIBITED COMMUNICATIONS

You may submit only User Content to the Site that is (a) owned by you, (b) submitted with the express permission of the owner or within the scope of the license to such content, or (c) in the public domain. You are prohibited from posting or transmitting to or from this Site any unlawful, threatening, harassing, libelous, offensive, defamatory, obscene, or pornographic materials, or other materials that would violate any law or the rights of others, including, without limitation, laws against copyright infringement, and rights of privacy and publicity. Violation of these restrictions may result in denial of or limitations on access by you to this Site. You agree that you will not use Express Text Services to spam Subscribers. Express Text may monitor your conduct, including reviewing incoming messages (in response to your broadcast) to determine whether you are violating the terms and conditions of this Agreement.

### 12. USER CONDUCT

In using the Site, including all Services and Materials available through it, you agree: not to disrupt or interfere with any other user's enjoyment of the Site or affiliated or linked sites; not to upload, post, or otherwise transmit through the Site any viruses or other harmful, disruptive, or destructive files; not to create a false identity; not to use or attempt to use another's account, password, service, or system without authorization from Express Text; not to disrupt or interfere with the security of, or otherwise cause harm to, the Site, or any Services, Materials, system resources, accounts, passwords, servers, or networks connected to or accessible through the Site or any linked sites. You understand and agree that sending unsolicited email advertisements or spam to Site users is expressly prohibited by these terms. As the user, you are required to accept total responsibility for your behavior and conduct while using the Services. You may not forward messages sent to you without the expressed prior consent of ExpressText.net and/or the Clients by whom it was initially sent. Likewise, you may not distribute or send unsolicited messages, or "spam," "chain letters" or "pyramid schemes" or any other form of unauthorized solicitation, including promotions and/or advertising of products or services is prohibited. Without limitation, Express Text reserves the right to remove any user from its system at any time, at its sole discretion.

### 13. MANAGING CONTENT AND COMMUNICATIONS

Express Text reserves the right, in its sole discretion, to delete or remove User Content from the Site and to restrict, suspend, or terminate your access to all or part of this Site, at any time without prior notice or liability. Express Text may, but is not obligated to, monitor or review any submissions or areas on the Site where users transmit or post User Content, including but not limited to areas where Services are available, and the substance of any User Content. To the maximum extent permitted by law, Express Text will have no liability related to User Content. Express Text disclaims all liability with respect to the misuse, loss, modification, or unavailability of any User Content. You agree and represent that you are entirely responsible for all User Content that you upload, download, post, list, transmit or otherwise use or make available via Express Text. Since we do not control the User Content posted on the Site or messages transmitted through our systems we cannot and do not guarantee the accuracy, integrity or quality of such User Content.

### 14. USER COMMENTS AND FEEDBACK

Any comments, feedback, notes, messages, ideas, suggestions or other communications (collectively, "Comments") sent by you to ExpressText.net shall be and remain the exclusive property of ExpressText.net. Your submission of any such Comments shall constitute an assignment to ExpressText.net of all-worldwide rights, titles and interests in all copyrights and other intellectual property rights in the Comments. ExpressText.net will be entitled to use, reproduce, disclose, publish and distribute any Comments you submit for any purpose whatsoever, without restriction and without compensating you in any way. You agree not to submit any Comments that may be submitted in violation of law or any agreement or obligation to keep the content of such Comments confidential.

D-S

Exh  O 6

ExpressText.net expressly disclaims any interest in any Comments that you are not authorized to submit.

### 15. PASSWORDS

You understand that you are solely responsible for maintaining the confidentiality of your password. You shall be solely and fully responsible for all activities that occur under your Username and Password. Express Text shall not be responsible for any loss, claim or other liability that may arise from the unauthorized use of any username, mobile number, and/or password. If a password is lost or stolen, it is your responsibility to notify Express Text so that the missing password can be deactivated and a new one assigned.

### 16. RESERVATION OF RIGHT TO REFUSE USERS/SERVICE

Express Text reserves the right to refuse or terminate Services granted to you for any reason whatsoever, at our sole discretion and without notice to you. Express Text shall have no liability with respect to such termination of services.

### 17. RESALE OF SERVICE

You agree not to resell the Service, use of, or access to the Service.

### 18. WARRANTIES AND DISCLAIMERS

Except as expressly provided otherwise in a written agreement between you and Express Text or you and a third party with respect to such party's materials or services, this Site, and all Materials and Services accessible through this Site, including all User Content submitted through the Site, are provided "as is" without warranty of any kind, either express or implied, including, but not limited to, the implied warranties of merchantability or fitness for a particular purpose, or the warranty of non-infringement. Without limiting the foregoing, Express Text makes no warranty that (i) the Services and Materials will meet your requirements; (ii) the Services and Materials will be uninterrupted, timely, secure, or error-free; (iii) the results that may be obtained from the use of the Services or Materials will be effective, accurate, or reliable; (iv) the quality of any Services or Materials obtained or accessible by you through the Site will meet your expectations; and (v) any errors in the Services or Materials obtained through the Site, or any defects in the Site, its Services or Materials, will be corrected. You understand and acknowledge that (i) Express Text does not control, endorse, or accept responsibility for any content, products, or services offered by third parties or site users through the Site; (ii) Express Text makes no representation or warranties whatsoever about any such third parties or site users, their content, products, or services; (iii) any dealings you may have with such third parties or site users are at your own risk; and (iv) Express Text shall not be liable or responsible for any content, products, or services offered by third parties or site users.

By signing up for Express Text Services, or subscribing to any merchant offer through our services, you are accepting complete and full responsibilities for payment of any and all mobile phone carrier fees associated with receiving text messages from Express Text and its member merchants.

The use of the Services or the downloading or other use of any Materials through the Site is done at your own discretion and risk and with your agreement that you will be solely responsible for any damage to your computer system, loss of data, or other harm that results from such activities. Express Text assumes no liability for any computer virus or other similar software code that is downloaded to your computer from the Site or in connection with any Services or Materials offered through the Site. No advice or information, whether oral or written, obtained by you from Express Text or through or from the Site shall create any warranty not expressly stated in these Terms of Use.

D-6

Exh 0-7

### 19. PERSONAL INFORMATION AND PRIVACY

You understand and agree that we may disclose information about you if we have a good faith belief that we are required to do so by law or legal process, to respond to claims, or to protect the rights, property, or safety of Express Text or others. Please refer to our Privacy Policy for more information about the manner in which we protect and use your information.

### 20. LIMITATION OF LIABILITY

In no event, including, without limitation, negligence, shall Express Text, its subsidiaries, affiliates, agents, officers, directors, employees, partners, or suppliers be liable to you or any third party for any special, punitive, incidental, indirect, or consequential damages of any kind, or any damages whatsoever, including, without limitation, those resulting from loss of use, data, or profits, whether or not Express Text has been advised of the possibility of such damages, and on any theory of liability, arising out of or in connection with the use of or the inability to use this Site, its Services, or Materials, the statements or actions of any third party on or through the Site, any dealings with other users or other third parties, any unauthorized access to or alteration of your transmissions or data, any information that is sent or received or not sent or received, any failure to store or loss of data, files, or other content, any Services available through the Site that are delayed or interrupted, or any website referenced or linked to or from this Site.

### 21. INDEMNIFICATION

You agree to defend, indemnify and hold harmless Express Text, its independent contractors, service providers and consultants, and their respective owners, directors, employees and agents, from and against any third party claims, damages, loss, liability, costs and expenses (including, but not limited to, reasonable attorney's fees) arising out of your use of this Website and/or Express Text Services, including without limitation any actual or threatened suit, demand, or claim made against Express Text and/or its independent contractors, service providers, or consultants, arising out of or relating to your conduct, your violation of these terms and conditions, or your violation of the rights of any third party. Without limiting the foregoing, you understand and agree that you will be solely responsible for any violations relating to TCPA and applicable regulations resulting from your use of the Site or its Services. If your violation or alleged violation causes us harm or requires us to defend ourselves in a legal (or administrative) action, you will fully indemnify us and reimburse us for all expenses, losses and injuries resulting from such action, including attorney fees and court costs relating to our defense of such action and the cost of collection (including attorney fees and court costs).

Truth in Messaging / Indemnification of Liability (Message/Alerts senders): You are solely responsible for any legal liability arising out of or relating to (1) the Message, and/or (2) any product and/or service which viewers and/or users can utilize through the Message. You represent and warrant that the Message(s) comply with ExpressText and ExpressText.net standards and policies; and that it holds the necessary rights to permit the use of the Message(s) by Express Text for the purpose of this Agreement; and that the use, reproduction, distribution, or transmission of the Message will not violate any criminal laws or any rights of any third parties, including, but not limited to, such violations as infringement or misappropriation of any copyright, patent, trademark, trade secret, music, image, or other proprietary or property right, false advertising, unfair competition, defamation, invasion of privacy or rights, violation of any anti-discrimination law or regulation, or any other right of any person or entity. You agree to jointly and severally indemnify Express Text and to hold Express Text harmless from any and all liability, loss, damages, claims, or causes of action, and expense of any nature (including reasonable legal fees and expenses that may be incurred by Express Text), arising out of or related to Express Text performance under this agreement, the copying, printing, distributing, or publishing of your Message(s), and/or your breach of any of the foregoing representations and warranties. You grant ExpressText the right to use, reproduce, and distribute your Message(s). You agree to request that Express Text be listed as an

O-7

Exh D-8

additional insured on any policy issued to you pursuant to which there could be coverage for any of the forms of legal liability described in this paragraph. You shall not include any advertising via Express Text Services that is misleading, unfair or deceptive. All advertising via Express Text shall comply with all applicable laws and regulations. You shall indemnify Express Text and hold Express Text harmless against all loss, liability, damage and expense of any nature (including legal fees) arising out of your breach of this clause.

22. **ASSIGNMENT**

You may not assign any of your rights or delegate any obligations hereunder, in whole or in part, whether voluntarily or by operation of law, without the prior written consent of Express Text Any such purported assignment or delegation by you without the appropriate prior written consent of Express Text will be null and void and of no force or effect.

23. **APPLICABLE LAW**

These Terms shall be governed by and construed in accordance with the laws of the State of Illinois, without resort to its conflict of law provisions. You agree that any action at law or in equity arising out of or relating to these Terms or your use of the Website and/or ExpressText.net Service shall be filed only in the state and federal courts located in Northlake, Illinois and you hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of such courts over any suit, action or proceeding arising out of or relating to these Terms or your use of this Website and/or ExpressText.net Service

# Supported Carriers

 

 

| Industries | Resources | Company | Contact Us |
|---|---|---|---|
| Restaurants | Blog | | |
| (restaurants.html) | (http://expresstext.net/blog) | | |

D-8

# EXHIBIT E

Exhibit E



**NEWS** from the Federal Communications Commission

**Media Contact:**
Will Wiquist, (202) 418-0509
will.wiquist@fcc.gov

**For Immediate Release**

## FCC STRENGTHENS CONSUMER PROTECTIONS
## AGAINST UNWANTED CALLS AND TEXTS
### *Commission Responds to Requests from Businesses and Attorneys General for Guidance on Robocall Blocking, Autodialers, Recycled Phone Numbers and More*

WASHINGTON, June 18, 2015 – The Federal Communications Commission today adopted a proposal to protect consumers against unwanted robocalls and spam texts. In a package of declaratory rulings, the Commission affirmed consumers' rights to control the calls they receive. As part of this package, the Commission also made clear that telephone companies face no legal barriers to allowing consumers to choose to use robocall-blocking technology.

The rulings were informed by thousands of consumer complaints about robocalls the FCC receives each month. Complaints related to unwanted calls are the largest category of complaints received by the Commission, numbering more than 215,000 in 2014.

Today's action addresses almost two dozen petitions and other requests that sought clarity on how the Commission interprets the Telephone Consumer Protection Act (TCPA), closing loopholes and strengthening consumer protections already on the books. The TCPA requires prior express consent for non-emergency autodialed, prerecorded, or artificial voice calls to wireless phone numbers, as well as for prerecorded telemarketing calls to residential wireline numbers.

The rulings provide much needed clarity for consumers and businesses. Highlights for consumers who use either landline or wireless phones include:

- **Green Light for 'Do Not Disturb' Technology** – Service providers can offer robocall-blocking technologies to consumers and implement market-based solutions that consumers can use to stop unwanted robocalls.

- **Empowering Consumers to Say 'Stop'** – Consumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time.

- **Reassigned Numbers Aren't Loopholes** – If a phone number has been reassigned, companies must stop calling the number after one call.

- **Third-Party Consent** – A consumer whose name is in the contacts list of an acquaintance's phone does not consent to receive robocalls from third-party applications downloaded by the acquaintance.

Additional highlights for wireless consumers include:

Fc 1

Exh E 2

- **Affirming the Law's Definition of Autodialer** – "Autodialer" is defined in the Act as any technology with the *capacity* to dial random or sequential numbers. This definition ensures that robocallers cannot skirt consumer consent requirements through changes in calling technology design or by calling from a list of numbers.

- **Text Messages as Calls** – The Commission reaffirmed that consumers are entitled to the same consent-based protections for texts as they are for voice calls to wireless numbers.

- **Internet-to-Phone Text Messages** – Equipment used to send Internet-to-phone text messages is an autodialer, so the caller must have consumer consent before calling.

- **Very Limited and Specific Exemptions for Urgent Circumstances** – Free calls or texts to alert consumers to possible fraud on their bank accounts or remind them of important medication refills, among other financial alerts or healthcare messages, are allowed without prior consent, but other types of financial or healthcare calls, such as marketing or debt collection calls, are not allowed under these limited and very specific exemptions. Also, consumers have the right to opt out from these permitted calls and texts at any time.

Today's actions make no changes to the Do-Not-Call Registry, which restricts unwanted telemarketing calls, but are intended to build on the Registry's effectiveness by closing loopholes and ensuring that consumers are fully protected from unwanted calls, including those not covered by the Registry.

By taking action today, the Commission is embracing the opportunity afforded by the 21 requests for clarification of the law to clearly stand with consumers against unwanted calls.

Action by the Commission June 18, 2015 by Declaratory Ruling and Order (FCC 15-72). Chairman Wheeler and Commissioner Clyburn, Commissioners Rosenworcel and O'Rielly approving and dissenting in part and Commissioner Pai dissenting. Chairman Wheeler, Commissioners Clyburn, Rosenworcel, Pai and O'Rielly issuing statements.

### 

**Office of Media Relations: (202) 418-0500**
**TTY: (888) 835-5322**
**Twitter: @FCC**
**www.fcc.gov/office-media-relations**

*This is an unofficial announcement of Commission action. Release of the full text of a Commission order constitutes official action. See MCI v. FCC. 515 F 2d 385 (D.C. Circ 1974).*

E-2

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RICKY R. FRANKLIN | ) | Civil Action No: 1:16-cv-09660 |
| | ) | |
| Plaintiff, | ) | **JURY DEMAND** |
| | ) | |
| v. | ) | **Honorable Robert W. Gettleman** |
| | ) | |
| | ) | **Magistrate: Maria Valdez** |
| EXPRESS TEXT LLC | ) | |
| | ) | |
| Defendant | ) | |

## DECLARATION OF RICKY R. FRANKLIN IN SUPPORT OF HIS OPPOSITION TO THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT

I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 as follows:

1. I am over 18 years of age and competent to make this declaration.

2. I am the Plaintiff in the above-styled case.

3. Plaintiff is the sole owner and user of phone number 678-650-xxxx. where text messages were sent to the Plaintiffs cellphone.

4. Plaintiff has not participated in any program called Instagram promotion. Plaintiff is not a member of Instagram and does not have an account with this party.

5. Plaintiff has received automated text replies from the Defendant system without human intervention. These other messages that the system generates constitute and ATDS and require no Human Invention.

6. According to the Terms of Use described by the Defendant EXP, all of their clients have licenses or user agreements to describe in detail the use their platform. As part of it summary judgment, the Defendant has failed to show the relationship between them and other 3rd parities. Exhibit D

7. Express text platform dials numbers from a list of numbers. Additionally, Express Text LLC, sends automated responses to cellphones in violation of the TCPA. At anytime the system has the capacity to dial numbers from a database without human intervention, the system qualifies as an autodialer. Exhibit C, G

8. Express text own Memorandum of Law, Exhibit A show that it system has the ability to dial at least 5,000 numbers at one time. (Def Exh A, p5, p11).

9. Defendant EXP's factual and legal arguments omit crucial information necessary for this Court's ruling on the issues before the Court. Specifically, the system used by the Defendant constitute a ATDS…whereby The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or

from a database of numbers. *2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

10. On several occasions the Plaintiff text back to the automated system and was replied to in less than a second. Plaintiff has received more than 115 text messages from the Defendant. Exhibit G

11. Defendant Express Text, LLC system has the ability to dial from a set list numbers, thus qualifying its system as an automated dialing system.

12. Plaintiff never gave consent to be called by the Defendant EXP. EXP cannot show that it had Plaintiffs written consent to contact him on his cellular phone. As such, the burden is on the business (Defendant) to show and demonstrate how that consent was gained.

I declare under penalty of perjury that the foregoing is true and correct.

By: _____

Ricky R. Franklin

Date: __15 June 2017__

# EXHIBIT G