IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICKY R. FRANKLIN | ) | |
| | ) | Case No. 1:16-cv-09660 |
| Plaintiff | ) | |
| | ) | Judge: Robert W. Gettleman |
| vs. | ) | |
| | ) | Magistrate: Maria Valdez |
| EXPRESS TEXT LLC | ) | |
| | ) | |
| Defendant. | ) | |

**EXPRESS TEXT LLC'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, a Georgia resident, filed this extortive law suit against Defendant for text messages sent to him by WorldWin Events, also a Georgia entity. Months ago, Defendant Express Text LLC ("Express Text") provided to Plaintiff complete contact information for WorldWin Events, the user responsible for sending the text messages, so that Plaintiff can pursue the correct defendant. In April, the Court gave Plaintiff leave to amend his complaint to name the proper defendant. Instead of doing so, Plaintiff filed an amended complaint – still against Defendant Express Text – only this time demanding a jury trial and making completely unsubstantiated (and in context, absurd) allegations that Express Text sent the messages "on behalf of" WorldWin Events. Throughout this litigation Defendant was aware that Express Text is a software platform and that it was not responsible for the text messages at issue.

It is an undisputed fact that Express Text is a communications software platform, and that, accordingly, it cannot be held liable for its users' use of the platform unless it is held vicariously liable under a plausible and properly alleged agency theory. All other issues are

1

rendered moot unless the Court finds (a) that there is a genuine dispute as to material facts regarding Express Text's liability under an agency theory, **and** (b) that such vicarious liability was properly alleged in Plaintiff's Amended Complaint (i.e., that "on behalf of" without *anything* more is sufficient to make a claim against Express Text). Thus, whether or not Plaintiff consented to the text messages, for example, is completely irrelevant unless the Court finds a genuine dispute as to Express Text's vicarious liability *and* finds that Plaintiff properly alleged such liability in his Amended Complaint. As discussed below, Plaintiff himself does not dispute the fact that Express Text is a mere platform and that Worldwin Event was only a platform subscriber and nothing more. See Plaintiff's Response to Defendant's Statement of Undisputed Facts ¶¶ 19, 20, 21. The most Plaintiff can state (which he in fact does), is that he does not know.

There is no genuine dispute that Express Text is a mere software platform (a facilitator) and that its only relationship with WorldWin Events is that of a customer and provider. Express Text's relationship with WorldWin Events is similar to a customer's relationship with ATT or Verizon Wireless, or an email user's relationship with Google, Yahoo or Microsoft. In all of Plaintiff's papers, not a shred of information is provided or even alleged to give rise even to a *remote* basis for alleging that Express Text and World Win had anything but a customer-provider relationship. Plaintiff's Amended Complaint cannot survive a threshold *Twombly* challenge because he has not come close to offering a *plausible* account.

**I. Express Text is a Mere Software Platform and Cannot be Held Liable under the TCPA for its Customers' Use of the System.**

Defendant offers web-based communications services that allow subscribers to create and initiate their own text messages and transmit those messages to recipients of their own choosing. Ashish Patel Declaration ¶¶ 6-20. Express Text does not control the content, destination, or timing of its subscribers' messages. Ashish Patel Declaration ¶¶ 6-20. Rather, Express Text acts

2

as a passive conduit between its subscribers and other downstream telecommunications carriers that deliver the messages to the ultimate recipients selected by Express Text subscribers.

### A. Plaintiff Does Not Dispute that WorldWin Events was a Mere Subscriber of Express Text's Platform Services and that Express Text did Not Send Messages "On Behalf Of" WorldWin Events.

Plaintiff amended his complaint and now alleges that Express Text sent the text messages "on behalf of" Worldwin Events. Amended Complaint ¶¶ 1, 22, 32. Plaintiff provides absolutely no basis for such allegations or any facts at all that would make such an allegation even remotely plausible.

In its sworn declaration, Defendant's Ashish Patel declared that Express Text has no relationship with Worldwin Events other than the fact that Worldwin Event was a subscriber on the platform. Ashish Patel Declaration ¶ 21. Express Text also declared that it did not send any text messages "on behalf of" Worldwin Events. Ashish Patel Declaration ¶ 22. Moreover, "Express Text did not control the manner and means by which the text message was created and distributed. Express Text did not direct or supervise the manner and means of the text messages campaign, create or develop the text messages, or play any role in the decision to distribute the messages." Ashish Patel Declaration ¶ 22. **None of these statements are disputed by Plaintiff**. The most Plaintiff is able to respond to the above is that he does not know. Plaintiff's Response to Defendant's Statement of Undisputed Facts ¶¶ 19, 20, 21.

Defendant's Statement of Undisputed Facts (SOF) ¶ 19 states: "Aside from WorldWin Events being a customer of Express Text and utilizing the Express Text platform for its promotional campaigns, the parties have absolutely no relationship." In response, Plaintiff states: "Plaintiff does not know the relationship of the 3rd party to the Defendant." (Plaintiff's Response to SOF ¶ 19). This is not a genuine dispute of facts – Plaintiff does not dispute Defendant's

3

statement. Plaintiff makes no allegations and offers no information whatsoever that would lead him even remotely to question Defendant's statement.

Defendant's SOF ¶ 20 states: "Express Text did not send text messages 'on behalf of' WorldWin Events." In response, Plaintiff states: "Plaintiff does not know the relationship of the 3rd party to the Defendant." (Plaintiff's Response to SOF ¶ 20). This is not a genuine dispute of facts – Plaintiff does not dispute Defendant's statement. Plaintiff makes no allegations and offers no information whatsoever that would lead him even remotely to question Defendant's statement.

In paragraph 21 of its Statement of Undisputed Facts, Defendant states: "Express Text is not an agent of WrldWin Events and WorldWin Events is not an agent of Express Text. There is no agency relationship of any type between the parties." Defendant's SOF ¶ 21. Plaintiff does not dispute this, as he cannot. Instead, Plaintiff states: "Plaintiff does not know the relationship of the 3rd party to the Defendant." (Plaintiff's Response to SOF ¶ 21). Plaintiff makes no allegations and offers no information whatsoever that would lead him even remotely to question Defendant's statement.

At no point in time has Plaintiff offered any facts or plausible arguments that would lead one to believe that WorldWin Events was anything more than a subscriber of Express Text's platform.

**B. Express Text is Neither Directly Liable nor Vicariously Liable for Text Messages Sent by WorldWin Events.**

**1. No Direct Liability Under TCPA.**

An element of a TCPA claim is that the defendant *made a call*. 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . (A) to **make** any call. . . .") (emphasis added). The FCC has clarified in its regulations implementing the TCPA that making

4

a call means to be the person or entity that *initiates* the message. *See* 47 C.F.R. § 64.1200(a)(1)(iii) (making it unlawful to "**initiate** any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipients prior express consent) (emphasis added).

This exact language matters. The FCC's decision clarifying that "to make" a call means to be the person or entity "initiating" the call is entitled to Hobbs Act deference, thus requiring district courts to apply this decision. *See, e.g., CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 448 (7th Cir. 2010). By analogy, the TCPA makes it actionable for a person to place an unlawful letter in the mailbox. It doesn't hold the U.S. Postal Service liable for delivering that letter. By ruling that only message *initiation* -- and not message *transmission* -- is actionable, the FCC has made the policy decision that intermediaries involved in message transmission do not have to verify independently that the person receiving a message has provided consent to the person sending the message.

Further, the FCC released two decisions reinforcing the fact that only those who initiate calls are liable for violations of the TCPA. Although neither the TCPA nor the FCC's regulations define the term "initiate," in the *Dish Network Order*,[1] the FCC clarified that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *Id*. at 6583 ¶ 26. The FCC further held that "a seller can also be a telemarketer -- e.g., when the seller initiates a call on its own behalf. And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it -- by

---

[1] *See In the Matter of the Joint Petition filed by Dish Network, LLC, The United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, 28 FCC Rcd. 6574 (2013) ("*Dish Network Order*").

giving the third party specific and comprehensive instructions as to the timing and the manner of the call, for example." *Id*. ¶ 27.

In addition, recently the FCC issued a declaratory ruling reaffirming that "the TCPA **holds** *a caller* **liable for TCPA violations** even when" the call would not have occurred but for an intermediary's independent acts. *GroupMe Order* ¶ 12.[2] In the *GroupMe Order*, the FCC favorably cited to the comments filed by Twilio, a VoIP provider that offers message transmission services. The portion of the Twilio Comments cited by the FCC argued that "intermediaries in the transmission path should not be required to obtain consent, nor should intermediaries have any TCPA liability when they simply maintain the transmission path of a call or message initiated by a sender."

The above FCC decisions and the plain language of the TCPA reflect the unambiguous intent of Congress. The TCPA's legislative history also makes clear that "[t]he regulations concerning the use of [automatic telephone dialing systems] apply to the persons *initiating* the telephone call or sending the message and **do not apply to the common carrier** or other entity **that transmits the call or message and that is not the originator or controller of the content of the call or message**." *See* S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968, 1997 (1991) (emphasis added). The TCPA thus does not impose liability on any entity simply because it was involved in the *transmission* of a message.[3]

To hold otherwise would be to impose TCPA liability on any carrier in the call flow that simply transmits the message, with no logical cut off. But again, the FCC has through its

---

[2] *In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278 at (rel. Mar. 27, 2014).

[3] In keeping with Congressional intent in enacting the TCPA and the common-sense notion that only one person initiates a call, the language of the TCPA also does not specifically provide for liability arising from aiding and abetting a TCPA violation. *See Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008) (ruling that "this Court will not imply expanded liability under the TCPA for aiding and abetting.").

regulations made a binding decision and provided a bright-line TCPA cutoff by only making it actionable to *initiate* an otherwise unlawful message. *See Rinky Dink, Inc. v. Elec. Merch. Sys.,* Civ. No. 13-1347-JCC, 2015 WL 778065, *8 (W.D. Wash. Feb. 24, 2015) ("Message 'initiation' and message 'transmission' are distinct concepts, particularly in assessing liability under statutes like the ... TCPA."). Just as no one would accuse Verizon Wireless of violating the TCPA if a customer sent an unsolicited text message to a business prospect, or accuse Microsoft of "sending emails" in violation of the CAN-SPAM Act by providing its Outlook software to its customers, Express Text does not "make" telephone calls when its customers use Express Text software. Express Text thus simply does not "make any calls" on behalf of its customers or otherwise, for liability to potentially arise under the TCPA. The active decision to initiate a particular call or send a particular message is a threshold requirement of any TCPA claim, and Plaintiff fails to allege (or raise a genuine dispute that) Express Text did anything of the sort here.

### 2. No Vicarious Liability Under TCPA.

Plaintiff's complaint against Express Text comes down to one allegation - that Express Text sent the text messages "on behalf of" WorldWin Events. Amended Complaint ¶¶ 1, 22, 32. If Plaintiff means to allege that Express Text is vicariously liable for the text messages its subscriber sent, Plaintiff failed to properly allege it. Plaintiff fails to allege any theory of agency, apparent authority or ratification. Such theories of liability must actually be pleaded in the operative complaint. *Mey v. Pinnacle Sec., LLC,* No. 5:11CV47, 2012 WL 4009718, *5 (N.D. W. Va. 2012); *see also Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012) (plaintiff claiming a TCPA violation under a vicarious liability theory must demonstrate that the principal "controlled or had the right to control" the agent and "the manner and means of the

[marketing] campaign" the agent conducted). Failure to properly plead a claim of vicarious liability when no theory of direct liability exists under the facts entitles a defendant to summary judgment. Similarly, courts in this District have required a Plaintiff seeking to hold another vicariously liable under the TCPA to explicitly plead such a claim. *In Toney v. Quality Resources, Inc.*, the court held that the plaintiff could not prevail under vicarious liability theories of apparent authority or ratification, as the plaintiff failed to plead such theories in her operative complaint**; allegations of "on behalf of" liability were held to be insufficient**. *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 744-45 (N.D. Ill. 2014). In *Smith v. State Farm Mutual Automobile Insurance Co.*, the court held that the plaintiff similarly failed to allege facts to support a claim of vicarious liability under the TCPA. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F.Supp.3d 765 (N.D.Ill 2014).

Plaintiff alleges absolutely nothing that would lead to even a remotely plausible conclusion that Express Text controlled WorldWin Events or "the manner and means of the [marketing] campaign" of WorldWin Events.[4] In fact, Plaintiff admits that he has no information to suggest that WorldWin Events was anything but a mere customer of Express Text. See Plaintiff's Response to SOF ¶¶ 19-21 ("Plaintiff does not know the relationship of the 3rd party to the Defendant.").

In any event, Plaintiff has failed to properly allege any plausible basis for vicarious liability. Simply slapping the words "on behalf of" into the Amended Complaint does not magically obviate the frivolousness of Plaintiff's case.

---

[4] In a futile attempt to keep this litigation going Plaintiff misquotes the Express Text Terms of Use. In any event, no court has come close to finding that such language in a platform's Terms of Use gives rise to vicarious liability. Google, Yahoo, Microsoft and every other online platform reserves the right to terminate accounts – this does not make them in control of the content, methods or means of a marketing campaign. See *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F.Supp.3d 765 (N.D.Ill 2014) for discussion on vicarious liability in the context of TPCA.

### 3. The Automatic Response Text Messages

In yet another futile attempt to keep this litigation going in hopes of extorting money from Defendant, Plaintiff argues Express Text should be **directly** liable under the TCPA because in immediate response to Plaintiff's "opt out" text messages, he received responses from Express Text.[5] As an initial matter, Plaintiff does not allege liability for such text messages in the Amended Complaint. The Amended Complaint seeks to hold Express Text liable only for those messages it sent "on behalf of" WorldWin Events.

But Plaintiff's argument would easily fail even if he had properly alleged such liability. Courts have consistently denied liability for texts sent in response to a user's text message, even when the initial texts were unauthorized. *Derby v. AOL, Inc*. is a case that discusses this at great length and cites to the many other cases finding such responsive text messages not actionable under the TCPA. *Derby v. AOL, Inc.* 2015 WL 3477658 (N.D. Cal. June 1, 2015). In that case, the Plaintiff alleged that he received three unsolicited text messages sent through AIM and intended for someone else. The messages listed the short code "265060" in the "from" field, which the complaint alleged is a short code operated by AOL. Plaintiff followed AOL's instructions for blocking the transmission of such AIM text messages in the future by sending a text to the "265060" short code with the message: "block." Immediately thereafter plaintiff received a response from AOL stating: "Messages from [AOL user] have been blocked. To unblock, reply 'unblock' or reply 'HELP' for more options." The *Derby* plaintiff made the very

---

[5] The frivolousness of Plaintiff's complaint and his disingenuousness become readily apparent by a look at the exhibits he submitted in Response to the Motion for Summary Judgment. Instead of responding "Stop" to the text messages, Plaintiff kept responding with other terms like "Help" and "Is this a real person" in order to generate more responses, with an apparent eye towards enlarging his claims. As evident in his Amended Complaint, Plaintiff is well aware that the term "STOP" is a standard term used to opt out of text messages. But he intentionally did not text back STOP because that would have ended the text messages. This is also apparently the tactic Plaintiff has used in other cases. See, for example, his complaint against DePaul University in this Court (Case Number 16-cv-08612), in which he acknowledges that DePaul's text provided for an opt-out by texting back "OUTPD." Instead of texting back OUTPD, however, Plaintiff texted back OUT – apparently wanting to generate more responses from DePaul.

same argument as the Plaintiff here – that he never consented to receive the responsive texts from AOL. The court rejected the argument and offered a plethora of reasons and case authority to support its rejection of the plaintiff's arguments.

The *Derby* court acknowledged that "[u]nlike the first three, the confirmation text was not composed by an AIM user, and was sent automatically by AOL in response to plaintiff's text requesting that future messages be blocked." *Id*. Nevertheless, "[d]espite these differences, the court conclude[d] that the confirmation text is also not actionable under the TCPA." *Id.*

The following are additional cases in which courts dismissed actions where TCPA liability was premised on confirmation texts like that alleged here. *See, e.g., Roberts v. PayPal, Inc.,* Case No. 12–0622, 2013 WL 2384242, at *3 (N.D.Cal. May 30, 2013) *appeal docketed,* No. 13–16304 (9th Cir.2013); *Friedman v. Massage Envy Franchising, LCC,* Case No. 12–2962, 2013 WL 3026641, at *5 (S.D. Cal. June 13, 2013); *Ryabyshchuck v. Citibank (S.D.) N.A.*, Case No. 11–1236, 2012 WL 5379143, at *3 (S.D.Cal. Oct. 30, 2012); *Holt v. Redbox Automated Retail, LLC,* Case No. 11–3046 (S.D. Cal. June 20, 2013); *Duguid v. Facebook, Inc*., (2016) 2016 WL 1169365 (N.D. Cal. March 24, 2016), Footnote 3 ("Plaintiff also alleges that Facebook sends automatic responses to opt-out texts. These responses are not actionable under the TCPA. See Derby v. AOL, Inc., No. 15-cv-00452-RMW, 2015 WL 3477658, at *6 (N.D. Cal. June 1, 2015) ('a single message sent in response to plaintiff's text (or texts) is not the kind of intrusive, nuisance call that the TCPA prohibits'); In Re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 ¶ 57 at *21 (2015) (describing a ruling in which the FCC 'concluded that a one-time text confirming a consumer's request to opt out of future calls did not violate the TCPA'"); *Glauser v. GroupMe, Inc*., 2015 WL 475111, (N.D. Cal., Feb. 4, 2015) ("Even if the court were to accept plaintiff's description of the process by

which the Welcome Texts were sent, it finds no basis for plaintiff's argument that the Welcome Texts were sent without human intervention.").

**II. Express Text's platform does Not Constitute an Automatic Telephone Dialing System.**

Defendant has outlined in great detail in its Motion for Summary Judgment why the Express Text platform is not an Automatic Telephone Dialing System and provided citations to other cases dealing with the same exact technology. In his Response, plaintiff states "courts throughout the country have consistently held that the types of human activities [Express Text] points to . . . do not rise to the level of 'human intervention' contemplated by the TCPA." But, despite an apparent plethora of such cases, Plaintiff fails to cite a *single case* for his statement. Nor is there a genuine issue of fact about the necessary intervention required of users to upload their contacts and actively send out text messages. Plaintiff has offered no information or plausible allegations as to question Defendant's declaration and Statement of Undisputed Facts regarding the level of human intervention required to utilize the Express Text platform. Express Text has also submitted as an exhibit to its Motion for Summary Judgment screenshots showing precisely how the system is used by users and the necessary intervention that is required to send out text messages.

In the meantime, every case that Defendant is aware of, where the court has reviewed the type of texting platform at issue here, has concluded that the platform is ***not*** an Automatic Telephone Dialing System because of the level of human interaction necessary to send out the text messages. *See Jenkins v. mGage LLC*, 2016 WL 4263937 (N.D. GA, 2016)*; Luna v. Shac, LLC*, 122 F. Supp. 3d 936 (N.D. Cal. 2015).

## CONCLUSION

For the foregoing reasons, Express Text respectfully requests that the Court grant its Motion for Summary Judgment and award it reasonable attorney fees for fees accrued after the time that Express Text provided complete contact information to Plaintiff of the user responsible for sending the text messages.

Dated: July 7, 2017                              Respectfully submitted,

**LAPIN LAW FIRM**

/s/ Moshe D. Lapin
_____

By:  Moshe D. Lapin (Admitted *pro hac vice*)
Lapin Law Firm
300 E. Lombard St., Suite 840
Baltimore, MD 21202
T: (888) 858-0340
F: (212) 320-0248
moshe@lapinlegal.com

*Attorney for Defendant*

Local Counsel Pursuant to LR83.15:
Eugene N. Traunfeld
500 Skokie Blvd. Suite 150
Northbrook, IL 60062
T: (312) 213-8095
traunfeldlaw@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2017, I electronically filed or caused to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois Eastern Division, the foregoing REPLY by using the CM/ECF system, which will send notification of such filing(s) to all counsels of record.

/s/ Moshe D. Lapin
_____
By:    Moshe D. Lapin (Admitted *pro hac vice*)
Lapin Law Firm
300 E. Lombard St., Suite 840
Baltimore, MD 21202
T: (888) 858-0340
F: (212) 320-0248
moshe@lapinlegal.com